Good morning. Jonathan Soglin, on behalf of the appellant, Mr. Griffin. The question before the Court today is indeed whether there was griffoneer in this case. But before moving to that question, this is, of course, an AEDPA case, and the question of the standard review has to be addressed. There are two prongs to the AEDPA standard review, and I'd suggest under either prong Mr. Griffin would prevail, but I want to focus on the contrary prong because I think it's the more applicable prong for analysis. Under the contrary prong, and this is the language from the Williams case in the U.S. Supreme Court, the Court can inquire as to whether the State Court of Appeals failed to apply correct controlling authority. In this State, the State Court of Appeals certainly cited Griffin and discussed Griffin, but in coming to its conclusion and analyzing whether there was griffoneer in this case, it applied what it called a reasonable likelihood standard. That standard is to be found nowhere in Griffin. It's a gloss put on it by California courts. It's a gloss that I suspect comes from other contexts of prosecutorial misconduct, prosecutorial error, where the courts do indeed inquire into the likelihood that a jury would understand a particular argument in a particular way. But griffoneer is of a different species, and that's because it's an enumerated right that's at issue. And this comes from the Donnelly case, which is a U.S. Supreme Court case authored opinion by Chief Justice Rehnquist, and I won't take a position on whether opinions by chief justices should be accorded particular greater weight or not. In Donnelly, the Court says when specific guarantees to the Bill of Rights are involved, this Court has taken care to assure that prosecutorial conduct in no way impermissibly infringes them, to be distinguished from what was at issue in that case, which was a routine due process violation in the form of prosecutorial argument. Well, look, the – what the prosecutor said in this case, if I recall correctly, was something like the plea of not guilty is not testimony, he didn't testify? He says he didn't testify in this case. There's no evidence he didn't do it. No evidence. Okay. Now, wasn't that responding to something that the – Of course, the Court has to inquire, is this a fair rebuttal situation? What defense counsel had argued was my client has entered a plea of not guilty and has, as such, denied all charges. It's as good as saying I didn't do it. That's – it's the – as good as saying I didn't do it is what the government has argued is – He says the guilty plea is the same as saying I didn't do it. The prosecutor says that's not true. Lookit, here's several different ways, reasons a person would plead not guilty in addition to he didn't do it and then said there's no evidence in this case other than he is guilty. Well, he says – but he also says he didn't testify. He didn't simply – But in his comment, the defense counsel essentially was, in a way, misleading the jury by telling them if my client were to testify, he would say that he didn't do it. But the client never testified. And so the prosecutor was simply trying to clarify, wasn't he? Well, I don't think the – even the state has argued that the defense was implying what the testimony would have been. I understand that, but that's the essence of it. He's saying it's as good as him saying he didn't do it. Well, again, putting it in context of all the defense counsel is saying, he's saying the burden is on the prosecution. That's what he's saying. But he didn't say that. Well, what you said is it's as good as saying I didn't do it. The district attorney has the burden once my client has a plea of not guilty and so on. You know, I've read a whole lot of transcripts, a whole lot. And I've heard a lot of arguments. And I have – I have – cannot recall seeing a case where defense counsel said the not guilty plea is as good as testifying that he didn't do it. Well, it may be – may be an unusual argument, but it doesn't – No. You know, I just – and I can't imagine as a reasonable prosecutor wouldn't get up and say he didn't testify. Well, the prosecutor could have gotten – So I can't say I understand how a reasonable State court could be said to get it wrong. The prosecutor didn't simply say a plea is not evidence. This is not a situation where a jury would misunderstand what defense counsel is saying. A jury wouldn't take it to assume that he has any way actually said anything to the jury. The jury understands in the context of the defense argument that this is just a comment explaining the burden of proof. And the prosecutor doesn't come back and simply say, well, plea isn't evidence. The prosecutor comes back and says he didn't testify in this case. There's no evidence he didn't do it. And getting back to the question of the reasonableness of the State court decision, because the State court applied the reasonable likelihood gloss, you're reviewing it de novo, in essence. If you agree that there's no reasonable likelihood standard to be applied, and that the State court applied the incorrect standard, then it's a contrary to case. And the question then is, looking at it de novo, is this there? And that's a very significant distinction to make, of course, under AEDPA. So your argument has two levels. Number one is that because of the way it was phrased in the California court, we no longer use the test that it was unreasonable application of Supreme Court law, and we look de novo. And then your second issue is, looking at it de novo, you feel that this went over the line and is a griffonaire. Exactly. It was not fair rebuttal. This is a comment that goes beyond the similar, simply noting that a plea is not evidence, which might have been fair comment in the situation. He went beyond that. And it's the coupling of he didn't testify in this case with there's no evidence that he didn't do it, one right after the other. But, counsel, it's a statement. It's as good as saying that he didn't do it. Is that an accurate statement of what a not guilty plea is? In the sense that there's no other reasons to go to trial, it might not be an accurate statement. But in the context of explaining there's a burden of proof here, in the context of a jury knowing he never testified, it's not misleading at all. You see it again and again. I'm not being critical. Defense is going to do the best if I'm defensing. But periodically they move that chess player too far across the board and they get nipped. This was pretty far across the board. And it seems to me clearly the prosecutor had to respond. Your objection is what he said. That is, in part of it he said he didn't testify. You would agree that everything else he said was fair response. In terms of explaining reasons someone might go to trial and speculating about that, I have no objection to that. Is there anything at all in his response other than he didn't testify that you would say was inappropriate under Griffin? The two sentences together. He didn't testify in this case. There's no evidence he didn't do it, coupled together. But beyond that, that's the argument. He could say that without anyone saying anything. There's no evidence that he didn't do it. The evidence is all in favor of the government. It's the coupling of them together. One statement flowing from another that makes, that they reflect on each other and explain his point. When he's saying he didn't testify in this case by following what there's no evidence that he didn't do it, he's coupling the comment on the failure to testify with the lack of evidence, which is particularly problematic in an identification case like this where the defendant doesn't testify and there's an alibi and no alibi is presented to the jury, particularly problematic in that sense. And Griffin cases do look at the nature of the defense to determine, you know, is this a problem or not. So I'll reserve the remainder of time. We'll give you a minute on reflection. May it please the Court. Thank you, Mr. Chief Justice. The State trial court, neither the State trial court, the state appellate court, or the district court found this Griffin error. As to the two points that counsel is making, one as to whether this is a contrary to case or which would, and he says it makes an argument that it's an incorrect standard by the State of California. We do not concede that the State court of appeal misapplied controlling United States Supreme Court authority. The issue of the State trial court, neither the State appellate court, nor the district court found this Griffin error. As to the two points that counsel is making, one as to whether this is an incorrect standard by the State of California. We do not concede that the State court of appeal misapplied controlling United States Supreme Court authority. And the other point that counsel is making is that the State trial court, neither the State appellate court, nor the district court found this Griffin error. As to the two points that counsel is making, one as to whether this is an incorrect  We do not concede that the State trial court, neither the State appellate court, nor the district court found this Griffin error. And the other point that counsel is making is that the State court of appeal misapplied   nor the district court found this Griffin error.  So what the court has to do in looking at a claim of Griffin error is what is, you know, what is the natural meaning of these words? What do these words mean? And then apply its determination of what these words mean to Griffin. And that's what Griffin, that's all Griffin is saying. That's all the California court of appeal is saying by its citation to its client. In this California Supreme Court decision, there is no gloss being put on Griffin at all, what the California court is saying. We have to interpret what these words mean, you know, say, what do these English words mean when you look at them, and then apply it to Griffin. And that's all Griffin says itself, because Griffin is an analysis of words. What would the jury have understood? So we do not see and we do not concede that there is any sort of gloss at all. If the court were to disagree, if one wanted to apply a de novo standard, which, again, we will say is not, you know, a step that this Court need to take, it reaches the same result that there was no Griffin error in this case. Both paths lead to the United States Supreme Court decision in United States v. Robinson, which talks about what I think is the clearest example and completely subsumes our case. I mean, in Robinson, the Supreme Court said, well, it was invited by what the defense said. It's, that case is, except for the fact that its facts are more extreme, the reasoning of that court and that decision is on all fours with what happened here. Here, the matter was started by defense counsel who said, you know, to the jury, you can't speculate why my client did not testify. And then goes through, and then the key phrase which we believe is the, you know, distinguishing factor of this from all the cases and has been the fount of our, the focal point of all our briefing from the State court on is that it's as good as saying I didn't do it. It simply is not. That is saying, you know, person says I didn't do it, they testify. When they testify, it's an issue of credibility. They can be impeached. This is not the same thing. And therefore, the prosecutor's comment was a completely fair response, completely controlled by or justified and completely correct under the United States Supreme Court in United States v. Robinson. I think we understand your position. If I could turn our attention perhaps to a different issue. With regards to the procedural bar, has the contemporaneous objection rule with regards to discretionary sentencing been consistently applied in, by the State court? I believe that, I'm going to answer the, I would love to say yes or no. At the outset of my answer, because that's what I always love to do. But I have to beg an indulgence and point out that this, I believe the Court's question goes to the uncertified issue. Correct. That's right. And quite candidly, I have not looked at that issue and I have not recently looked at the contemporaneous application. I know there's, there has been litigation. I have not looked at that recently. And I don't feel comfortable, quite candidly, in giving the Court a yes or no answer. Fair enough. And I do apologize for that. Unless. Are there any further questions? The Court has any further questions. Thank you. Just a couple of quick points. On, counsel cites the Cotton case from the Fifth Circuit. Of course, that's not on the legal landscape in terms of clearly established law by the U.S. Supreme Court. I don't think Cotton can be considered on that point. As to what the State court was doing, it very clearly applied a standard that's not found in Griffin. Griffin does talk about language. You look at the language. But Griffin doesn't say what the State court says here. We apply a reasonable likelihood standard for viewing prosecutorial remarks, inquiring whether there is a reasonable likelihood that juries misconstrued or misapplied the words in question. That's a standard the State court applied. That's not from Griffin. That's something the State courts have essentially adopted. Robinson is clearly factually distinguishable. In that case, counsel complained or in argument that his client, defense counsel complained in argument that his client had been denied the opportunity to explain himself. That's a far cry from the comment made in this case. It's a one that very much more opens the door to prosecutorial comment. Thank you. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case, which is United States v.
judges: Wallace, Schroeder, Benitez